**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ISMAEL MELENDEZ,

                         Petitioner

         - v -                                Civil No. 9:03-CV-00051
                                               (TJM/RFT)

DAVID L. MILLER, Superintendent, Eastern
Correctional Facility,

                        Respondent.

**APPEARANCES:**                                **OF COUNSEL:**

ISMAEL MELENDEZ
Petitioner, *Pro Se*
99-A-1051
Woodbourne Correctional Facility
P.O. Box 1000
99 Prison Road
Woodbourne, New York 12788

HON. ELIOT SPITZER                           GERALD J. ROCK, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Attorney for Respondent
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

      On December 4, 1998, *pro se* Petitioner Ismael Melendez was convicted, after a three week

jury trial, of two counts of robbery in the first degree, robbery in the second degree, criminal

possession of a weapon in the third degree, and two counts of unlawful imprisonment in the second

degree. *See* Transcript of Trial of *People v. Melendez, et al.* (11/12/98) [hereinafter "Trial Tr."] at

2063-64.  Petitioner was subsequently sentenced, on February 17, 1999, to the following prison

terms: twelve and one-half to twenty-five years for each of the first degree robbery counts, seven

and one-half to fifteen years for the second degree robbery count, two and one-third to seven years for the criminal possession of a weapon count, and one year for each of the unlawful imprisonment counts. Sentencing Hearing at 17-18. The trial court further directed these sentences to run concurrently. *Id.* at 18. Petitioner now seeks a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, on the following grounds: (1) the testimony of an alleged agent of the police violated Petitioner's right to counsel and right to confront; (2) Petitioner's trial should have been severed from that of his co-defendants; (3) the testimony regarding admissions made by Petitioner's co-defendant violated Petitioner's rights under the Confrontation Clause; (4) the trial court erred in refusing to allow Petitioner's counsel to admit newspaper articles into evidence; (5) the trial court erred when it reintroduced a previously dismissed charge in its answer to a question submitted by the jury during its deliberations; and (6) the accumulated errors of the trial court denied Petitioner his right to a fair trial. Dkt. No. 1, Pet. Addendum at pp. 4-21. For the reasons that follow, it is recommended that the Petition be **DENIED**.

## I. BACKGROUND

Petitioner's conviction arose from the early morning robbery of a Mr. Subb van following a concert at the Saratoga Performing Arts Center (SPAC) in Saratoga Springs, New York, on August 11, 1997. Trial Tr. at 651-52, 659, & 662-69. Employees of Mr. Subb had been operating a concession stand at SPAC on August 10. *Id.* at 652. Two of those employees, William Pompa, Jr., and Robin Nixon, eventually returned to the Mr. Subb van at approximately midnight, at which time they proceeded to drive back to the Mr. Subb store located in Ballston Spa, New York. *Id.* at 653 & 659. As Mr. Pompa drove the Mr. Subb van, he and Ms. Nixon spotted a dark car swerving on the road ahead of them. *Id.* at 660. This car then pulled to the shoulder of the road and the Mr. Subb

van passed the car.  *Id*. at 661.  Shortly thereafter, the engine of the Mr. Subb van stalled and Mr.

Pompa was forced to steer the van to the shoulder of the road.  *Id.*  As he attempted to restart the

van while it was still in motion, the same dark car that had previously pulled to the side of the road

swerved in front of the Mr. Subb van, forcing Mr. Pompa to stop.  *Id.*  Two masked men with

shotguns exited the car and, as they approached the van, ordered Mr. Pompa and Ms. Nixon to get

down.  *Id.*  The men then bound Mr. Pompa and Ms. Nixon with duct tape, put them in the back of

the van, and proceeded to drive away in the van as they held the employees at gunpoint.  *Id*. at 663-

64.  After driving for about five or ten minutes, the men left Mr. Pompa and Ms. Nixon duct-taped

in the van and fled with about $3,800.  *Id*. at 658 & 668-69.

　　　The Saratoga Springs Police Department quickly launched an investigation into the Mr.

Subb robbery, but this effort failed to immediately uncover any possible suspects.  *Id*. at 1404-06.

However, on October 16, 1997, the police received a phone call from a man named Wilfredo Vigay,

who provided information to the police that implicated three individuals in the Mr. Subb robbery.

*Id*. at 1406-07.  Based upon the information provided by Mr. Vigay, the police focused their

investigation on the three suspects and conducted numerous interviews with persons familiar with

the facts of the case.  *Id*. at 1407.  These interviews, which were conducted over a matter of months,

eventually led to the arrest of Petitioner and his co-defendants, Lloyd Kelone and Ronald Roberts.

*Id*. at 1408 & 1412-72.

　　　Petitioner was tried jointly with co-defendants Kelone and Roberts.  *Id*. at 13.  At trial, the

People offered a significant amount of testimonial evidence, much of which related to various

admissions that were allegedly made by Petitioner and his co-defendants.  The prosecution called a

total of twenty-nine witnesses ranging from law enforcement officials to acquaintances of Petitioner

and his co-defendants.  *See generally* Trial Tr.  Among some of those who testified as to admissions

made by the defendants in the case were Aaron Allen, Wilfredo Vigay, Michael McQueen, and

Belinda McGuinness.

      Aaron Allen, who was an employee of Mr. Subb, testified that he had provided Petitioner

and his co-defendants with information, the sum and substance of which indicated that the Mr. Subb

concession stand at SPAC would do its best business on August 10, 1997.  Trial Tr. at 812-13 &

820-21.  Mr. Allen further testified that he informed the defendants as to how the proceeds from the

Mr. Subb concession stand would be transported and where the Mr. Subb van would be parked at

SPAC.  *Id*. at 819-20 & 828.

      Wilfredo Vigay's testimony centered on three conversations that he claimed to have had

with one or more of the defendants, the subject matter of which related to the Mr. Subb robbery.

Mr. Vigay testified that his first conversation took place prior to the robbery and consisted of a

description by Petitioner of the electronic device that would be used to disable the Mr. Subb van.

*Id*. at 886-88.  Mr. Vigay's second pre-robbery conversation was with all three defendants and once

again pertained to the disabling device that they planned to place in the Mr. Subb van.  *Id*. at 889-

98.  The third and final conversation, as described by Mr. Vigay, was with Petitioner and co-

defendant Kelone and occurred after the robbery had taken place.  *Id*. at 889-903.  Mr. Vigay

testified that Kelone provided information about the robbery during this final conversation.  *Id*. at

902.

      The prosecution also offered the testimony of Michael McQueen.  Mr. McQueen had been

incarcerated in the Rensselaer County Jail at the same time that defendants were being held in that

facility.  *Id*. at 961.  He testified that during their time in jail, both Petitioner and co-defendant

Roberts admitted to Mr. McQueen their involvement in the Mr. Subb robbery.  *Id*. at 974-77.  In addition, an individual named Robert Tucker testified that he and Petitioner were in jail together and that Petitioner admitted to being involved in the Mr. Subb robbery.  *Id*. at 1022-24.

Finally, additional testimony was given by Belinda McGuinness regarding admissions made by the defendants.  Ms. McGuinness provided further information regarding the disabling device allegedly used by defendants, having received such information from co-defendant Kelone.  *Id*. at 1063-64.  According to Ms. McGuinness, co-defendant Kelone detailed to her how he and his accomplices robbed the Mr. Subb van and how they used the device to disable the van's engine.  *Id*. at 1063-72.  Ms. McGuinness also testified that prior to the robbery she saw the disabling device in the basement of Petitioner's home.  *Id*. at 1064.

On December 4, 1998, the jury convicted each of the three defendants of two counts of robbery in the first degree, robbery in the second degree, criminal possession of a weapon in the third degree, and two counts of unlawful imprisonment in the second degree, and judgment was thereafter entered by Saratoga County Court.  *Id*. at 2065-66.  Judgment was affirmed on appeal to the New York Supreme Court, Appellate Division, Fourth Department.  *People v. Melendez*, 727 N.Y.S.2d 773 (N.Y. App. Div., 4th Dep't 2001).  Leave to appeal to the Court of Appeals was denied on February 28, 2002.  *People v. Melendez*, 767 N.E.2d 161 (N.Y. 2002).

## II.  DISCUSSION

### A.  Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") precludes a federal court from granting relief under a state prisoner's application for a writ of *habeas corpus* unless the state courts' adjudication of the merits of the claim

-5-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The AEDPA also provides that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. LeFevre*, 246 F.3d at 88 (quoting the relevant portion of § 2254(e)(1)).

### B.  Right to Confront Witness Regarding Agency Relationship

Petitioner argues that his right to confront a witness under the Confrontation Clause was denied when the trial court refused to allow his attorney to question a witness for the prosecution regarding a potential agency relationship between the witness and the police.  Petitioner's argument also appears to raise issues relating to his Sixth Amendment right to assistance of counsel.

The Sixth Amendment's Confrontation Clause, which applies to the states through the Fourteenth Amendment, ensures a criminal defendant's right to confront the witnesses against him. U.S. CONST. amend. VI; *see also Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994).  While the right to confront embodied in the Confrontation Clause protects a defendant's right to physically confront a witness, the Supreme Court has stated that the Confrontation Clause's import is that it

> (1) insures that the witness will give his statements under oath-thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*California v. Green*, 399 U.S. 149, 150 (1970) (quoting 5 J. Wigmore, Evidence § 1367 (3d ed. 1940); *see also Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (stating that "[t]he opportunity for

cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process"); *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." (quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed. 1940) (emphasis in Wigmore)); *Howard v. Walker*, 406 F.3d 114, 128 (2d Cir. 2005) (quoting *California v. Green*).

The Sixth Amendment also protects a criminal defendant's right to the assistance of counsel. U.S. CONST. amend. VI.  The right to counsel attaches "at all critical stages in the proceeding after the initiation of formal charges."  *United States v. Davis*, 239 F.3d 283, 285-86 (2d Cir. 2001) (quoting *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998)) (internal quotation marks and other citations omitted).  A defendant's Sixth Amendment right to counsel is violated "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206 (1964).  Accordingly, the Sixth Amendment "bars the government from planting an agent to elicit jailhouse admissions from an indicted defendant who has asserted his right to counsel."  *United States v. Birbal*, 113 F.3d 342, 345 (2d Cir. 1997) (citing *United States v. Henry*, 447 U.S. 264 (1980) (applying the *Massiah* standard to find that a government agent "deliberately elicited" incriminating statements from a criminal defendant outside the presence of counsel)).

Nevertheless, if an informant working independently of the police and  prosecution, provides information on his own initiative, and the government only receives such information, the informant is not an agent of the government.  *United States v. Birbal*, 113 F.3d at 345 (citing *Kuhlman v. Wilson*, 477 U.S. 436, 459 (1986) & *United States v. Rosa*, 11 F.3d 315, 329 (2d Cir. 1993) for the proposition that "[a]lthough the government [has] an affirmative obligation not to *solicit* incriminating statements from the defendant in the absence of his counsel, . . . there is no

constitutional violation when a government informant merely listens and reports . . .") (internal

quotation marks and citations omitted) (emphasis in *Birbal*)).

Here, Petitioner was an inmate in the Rennsalaer County Jail at the same time that Mr.

McQueen was incarcerated in that facility.  Trial Tr. at 961.  During their time at that facility, Mr.

McQueen was in daily contact with the Petitioner.  *Id.*  As a result, Mr. McQueen was eventually

approached on two occasions by members of the Saratoga Springs Police Department who were

investigating the Mr. Subb robbery.  *Id*. at 978.  On both occasions, Mr. McQueen voluntarily gave

a written statement regarding inculpatory statements made by Petitioner and his co-defendant

Ronald Roberts.  *Id*. at 984-85.

Petitioner sought to suppress any statements he made to Mr. McQueen, arguing that Mr.

McQueen was a government agent and that such statements were made involuntarily.  Appellant's

Brief and App., Decision and Order, dated Oct. 28, 1998 at pp. A369-72.  The trial court rejected

Petitioner's motion to suppress based on the finding that Mr. McQueen was not an agent of the

police.  *Id*. at p. A372.  In so ruling, the court pointed to the lack of specific instructions or coaching

by the police, as well as the absence of an offer for a favorable plea bargain.  *Id.*

Here, the government did not induce Mr. McQueen to gather information from the Petitioner

and his co-defendants; on the contrary, Mr. McQueen voluntarily disclosed to the police whatever

information he had regarding admissions made by Petitioner.  Trial Tr. at 978-79.  Moreover,

nothing in the trial record suggests that the police used Mr. McQueen to deliberately elicit

incriminatory statements from Petitioner.  In addition, there is no suggestion that Mr. McQueen was

a paid police informant, nor is there any indication that he received favorable treatment in exchange

for providing information to the police.  *Id*.  In fact, Mr. McQueen specifically testified that there

*-8-*

were no promises made by the police in return for his assistance.  Tr. at 978.  Although it was the government that approached Mr. McQueen and not the reverse, the government was nonetheless the passive recipient of information from an informer who worked independently and voluntarily. Thus, in accordance with *Massiah* and *Henry* and its progeny, the trial court properly found that Mr. McQueen was not an agent of the government, and that there was no violation of Petitioner's right to counsel.

In terms of Petitioner's argument that his right to confront Mr. McQueen was violated, the trial record offers no support for this claim.  The record of the suppression hearing held before trial plainly illustrates that Petitioner's lawyer had an opportunity to question Mr. McQueen regarding his relationship with law enforcement authorities.  Suppression Hearing at pp. 100-06 (11/20/98).

Accordingly, this ground of the Petition should be **denied**.

### C.  Severance

Petitioner argues that the trial court erred when it rejected Petitioner's motion to sever his trial from that of his co-defendants.

There is a general preference under federal law for joint trials when defendants are indicted together.  *See United States v. Beverly*, 5 F.3d 633, 637 (2d Cir. 1993) (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)); *see also Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Moreover, the decision on whether to sever is left to the sound discretion of the trial judge.  *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003).  In order for a federal court to find a clear abuse of judicial discretion and reverse a denial of a motion to sever, a petitioner must meet the difficult burden of showing that the joinder was so prejudicial as to deny the petitioner a fair trial.  *Boddie v. Edwards*, 2005 WL 914381, at *7 (S.D.N.Y. Apr. 20, 2005) (citing *Grant v. Hoke*, 921 F.2d 28, 31

(2d Cir. 1990)).  Moreover, merely demonstrating that some antagonism existed between the defenses of the co-defendants does not necessitate severance.  *E.g., Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990) (citation omitted).  On the contrary, a defendant's defense reaches a level of antagonism with a co-defendant's defense if the jury, "in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."  *Id.* (internal quotation marks and citations omitted).

Here, Petitioner was indicted together with co-defendants Kelone and Roberts.  Petitioner's motion to sever his trial from that of his co-defendants was denied by the trial court.  Appellant's Brief and App., Decision and Order, dated Nov. 6, 1998, at p. a373.  Since a trial court's refusal to grant a motion to sever is a discretionary decision, Petitioner here would have to show an abuse of the trial court's discretion to demonstrate that its denial of severance was in error.  However, Petitioner has failed to show such an abuse of discretion; absent from the Petition is a showing of substantial prejudice resulting from the denial of his motion to sever.  There is no indication that Petitioner's defense was antagonistic to the defenses put forward by his co-defendants.  Indeed, the trial record indicates that counsel for the Petitioner often made the same arguments as those of the attorneys for Petitioner's co-defendants.  Trial Tr. at 1902-32.  This fact is most readily apparent in the closing arguments made by Petitioner's trial counsel and those of his co-defendants, as the summations were devoted solely to attacking the state's case.  *Id.* at 1879-1971.  Thus, even if some minor elements of antagonism existed between the defenses of Petitioner and his co-defendants, such a showing does not rise to the level required to defeat the preference for joint trials and compel severance.

Accordingly, this ground of the Petition should be **denied**.

**D.  *Bruton*[1] Claim**

Petitioner argues that his rights under the Confrontation Clause were violated when the trial court failed to exclude testimony regarding admissions made by his co-defendants that simultaneously implicated Petitioner.

The admission of a non-testifying co-defendant's confession in a joint trial violates a defendant's rights under the Confrontation Clause if it names the defendant as an actor in the crime. *Bruton v. United States*, 391 U.S. 123, 125-26 (1968).  In such a case, a violation of the Confrontation Clause occurs irrespective of curative jury instructions.  *Id*. at 137.  However, "the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (declining, however, to address the admissibility of a co-defendant's confession where the defendant's name has been substituted with a neutral pronoun).  The Second Circuit has held that a defendant's *Bruton* rights are violated "only if the statement, standing alone, would clearly inculpate him without introduction of further evidence.  *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989) (citation omitted).  In addition, the Second Circuit has held that there is no *Bruton* violation when, in a non-testifying co-defendant's confession, a defendant's name is replaced with neutral pronouns, "with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes[.]"  *Id*.

Here, both Wilfredo Vigay and Belinda McGuinness testified as to admissions made by

---

[1] *See Bruton v. United States*, 391 U.S. 123 (1968).

Petitioner's co-defendant Lloyd Kelone.  Specifically, Mr. Vigay testified that after the robbery he had a conversation with Petitioner and co-defendant Kelone during which Kelone discussed the robbery.  Mr. Vigay testified that Kelone stated that "one individual drove and two approached the van."  Trial Tr. at 899-902.  In addition, Ms. McGuinness testified that Kelone informed her of the details of the robbery.  At various points in her testimony, Ms. McGuinness used the words "them," "they," or "others" to refer to those individuals implicated by co-defendant Kelone in his admission. *Id*. at 1063 & 1071-72.

Petitioner claims that the testimony of both Mr. Vigay and Ms. McGuinness violated the rule established under *Bruton*.  However, rather than identifying Petitioner by name in their testimony, both Mr. Vigay and Ms. McGuinness substituted the names of Petitioner and co-defendant Ronald Roberts with entirely neutral pronouns.  The use of neutral pronouns such as "them" or "they" is wholly permissible under the standards established by the Second Circuit for *Bruton* claims.  At no point during the witnesses' discussion of the co-defendant's admission was Petitioner's name mentioned.  This was likely due to the stern warning issued by trial judge prior to the testimony of the witnesses mentioned above.  In particular, the trial judge ordered the prosecution to advise those witnesses that they would not be permitted to mention by name those persons implicated by the admissions of Petitioner's co-defendants.  *Id*. at 805-06 & 1060-61.  In addition, the trial judge sufficiently instructed the jury that any testimony relating to a co-defendant's admission should be viewed solely with respect to that individual co-defendant.  *Id*. at 2017-18 (instructing the jury that "[w]ith regard to any evidence that one of the defendants told someone else that that defendant engaged in unlawful activity, I now charge you that this evidence may be considered by you only as to the defendant who made the statement").

*-12-*

Moreover, Petitioner conveniently fails to point out that in addition to testimony regarding admissions made by Petitioner's co-defendant Kelone, Mr. Vigay also testified that Petitioner himself invited Mr. Vigay to participate in the robbery and provided details about how the robbery would be carried out. *Id*. at 886-87.

In sum, since the use of neutral pronouns has been approved by the Second Circuit, there is no *Bruton* violation here, and Petitioner's rights under the Confrontation Clause were not violated.

Accordingly, this ground of the Petition should be **denied**.

### E.  Exclusion of Newspaper Articles

Petitioner argues that he was denied his right to a fair trial based on the trial court's refusal to admit newspaper articles into evidence.

Evidentiary issues are generally a matter of state law and "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Dey v. Scully*, 952 F. Supp. 957 (E.D.N.Y. 1997).  Two questions must be addressed when considering a *habeas* challenge to a state court evidentiary ruling: (1) whether the exclusion of the evidence was contrary to state law, and (2) whether the error violated the defendant's right to a fair trial.  *Dey v. Scully*, 952 F. Supp. 957, 969 (E.D.N.Y. 1997).

Under New York law, a newspaper article need not be authenticated by extrinsic evidence for it to be admissible at trial.  N.Y. C.P.L.R. 4532.  Nevertheless, evidence is not relevant unless "it tends to prove the existence or non-existence of a material fact, i.e. a fact directly at issue in the case." *People v. Primo*, 753 N.E.2d 164, 168 (N.Y. 2001).  A New York court, however, "may, in

its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues, or misleading the jury." *Id.* (citations omitted).  In addition, in order to admit a newspaper article into evidence, a proper foundation must first be established. *See Rockwell v. Straub Bldg. Units, Inc.*, 40 N.Y.S.2d 181, 182-83 (N.Y. App. Div., 3d Dep't 1943) (finding error in the admission of a newspaper article into evidence where no foundation was laid); *Pedro v. Burns*, 620 N.Y.S.2d 524, 525 (N.Y. App. Div., 3d Dep't 1994) (reversing a trial court's admission of a newspaper article based on lack of foundation).

Here, towards the end of the trial, Petitioner sought to introduce into evidence at least three newspaper articles.  Petitioner's purpose in entering these articles into evidence was to show that a number of the prosecution's witnesses could have received their information about the Mr. Subb robbery from newspaper accounts of the incident.  Trial Tr. at 1789.  The trial court refused Petitioner's request to introduce these newspaper articles, pointing to the lack of information about both the basis of the reports and the sources relied upon.  Trial Tr. at 1794.

Since issues of evidence are a matter of state law, the trial court's finding that the newspaper articles were inadmissible would only amount to a violation of due process if exclusion of the articles was so extremely unfair as to violate fundamental conceptions of justice.  Extreme unfairness is not present in Petitioner's case.  First, Petitioner has failed to show that the trial court's exclusion of the newspaper articles was in error under New York's evidence law.  *See Dey v. Scully*, 952 F.Supp. at 969.  The trial court was seemingly concerned with the relevance of the newspaper articles, and for good reason.  Not only did Petitioner fail to establish any potential probative value of the articles, but the trial record is entirely devoid of any adequate foundation

upon which to base the admission of such articles.  Petitioner did not establish at any point in the

trial that any prosecution witness read the newspaper articles that Petitioner sought to introduce, nor

did Petitioner seek to impeach those witnesses on the basis of those articles during cross-

examination.

Second, even if the exclusion of the newspaper articles was found to be erroneous, a

showing of extreme unfairness resulting from such exclusion is not supported by the facts.  As the

Attorney General appropriately points out, had the newspaper articles been so critical to Petitioner's

case, his counsel would have sought to impeach the prosecution's witnesses based on the content of

those articles.

Accordingly, this ground of the Petition should be **denied**.

### F.  Supplemental Jury Instruction

Petitioner argues that the trial court violated due process when it reintroduced a previously

dismissed charge in its answer to a question submitted by the jury during its deliberations.  More

specifically, Petitioner contends that the trial court's response to a question from the jury relating to

the individual culpability of the defendants essentially resubmitted the previously dismissed

conspiracy charge.

In order to obtain a writ of *habeas corpus* on the basis of faulty jury instructions, a state

prisoner must show that an error in the state court's instructions to the jury violated the prisoner's

federal constitutional rights.  *See Alvarez v. Scully*, 833 F. Supp. 1000, 1007 (S.D.N.Y. 1993)

(citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) & *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.

1985) (further citations omitted)).  The adequacy of a trial court's supplemental jury instruction is

to be reviewed "in the context of the instructions as a whole."  *United States v. Velez*, 652 F.2d 258,

261-62 (2d Cir. 1981) (explaining that "a supplemental charge is not defective where it responds adequately to the jury's request for clarification") (citations omitted).  Moreover, even if a trial court's supplemental jury instructions are found to be in error, such error will generally not necessitate reversal where there is an absence of prejudice to the defendant.  *Id.* at 262 (citing *United States v. Gleason*, 616 F.2d 2, 21 (2d Cir. 1979)).

Here, the trial judge's charge to the jury included an instruction on New York's law relating to accessorial conduct.  Trial Tr. at 2018-19.  Petitioner and his co-defendants were aware of the judge's intention to include a jury instruction on accessorial conduct, yet neither Petitioner nor his co-defendants objected to any such instruction.  *See id*. at 1841-77.  After having retired to deliberate, the jury submitted a question asking for clarification on a particular matter of law.  *Id*. at 2056.  The trial judge treated the jury's question as one concerning the jury instruction relating to accessorial conduct, and proceeded to reread that portion of the jury instruction which dealt with accessorial conduct.  *Id*. at 2059-61.  The trial court's supplemental instruction was identical in all respects to its original instruction on the matter of accessorial conduct.  *Compare* Trial Tr. at 2018-19 *with* Trial Tr. at 2059-61.

A federal court cannot grant *habeas* relief to a state prisoner unless that prisoner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(a); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  Under the exhaustion requirement, a prisoner's federal claim "must be fairly presented to the state courts," meaning that the state court must be presented with the same claims put forward by the prisoner in federal court.  *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) ("[I]t is not sufficient merely that the federal habeas applicant has been through the state courts.") (citations omitted).

*-16-*

Plaintiff failed to object at trial to the jury instructions and, accordingly, failed to raise such claim on appeal in state court.  The general rule in this Circuit has been to preclude collateral attacks on a conviction when the petitioner failed to raise the issue on direct appeal and in doing so, dismiss the claim as unexhausted.  *Zarvela v. Artuz*, 254 F.3d 374, 378-79 (2d Cir. 2001).  This Court may, however, determine that there is an "absence of available state corrective process" under § 2254(b)(1)(B)(I) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."  *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).  Under these circumstances, Melendez's jury instruction claim would be deemed exhausted since, in the first instance, having failed to object to the inclusion such instruction, Melendez failed to preserve such claim for appellate review, and, second, since Melendez already raised one appeal in state court, he could not go back and institute a second appeal.  However, if in reviewing the petition the federal court finds that claims are procedurally barred in state court, then they are similarly procedurally barred in federal court.[2]  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)); *see also Reyes v. Keane*, 18 F.3d 136, 139 (2d Cir. 1997).

The Court's review of the substance of these procedurally defaulted claims is therefore conditioned upon Petitioner demonstrating cause for his default and resulting prejudice, or presenting evidence to show that he is "actually innocent" of the crime of which he was found

---

[2] When a claim is determined to be unexhausted, the petitioner is afforded an opportunity to bring the claims before the state court first, and then resubmit the *habeas* petition.  When, however, a claim is determined to be procedurally defaulted, such a determination renders the claim adjudicated on the merits and any future *habeas* relief will be deemed a second or successive petition under § 2241.

guilty.[3]  *Coleman v. Thompson*, 501 U.S. at 750; *Ramirez v. Attorney General of State of New York*,

280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000)

(citing *Coleman*).

To establish legal cause for his or her procedural default, a petitioner must show that some

objective external factor impeded his or her ability to comply with New York's procedural rules.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

Examples of external factors include interference by officials, ineffective assistance of counsel, or

that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal.

*Murray v. Carrier*, 477 U.S. at 488.  Attorney ignorance or inadvertence is not cause, however,

since the attorney is considered the petitioner's agent when acting, or failing to act, in furtherance

of the litigation, the petitioner must "bear the risk of attorney error."  *Coleman v. Thompson*, 501

U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. at 488).

Petitioner has not demonstrated legal cause for his procedural defaults regarding his jury

instruction claim.  Since he cannot establish such cause, this Court need not decide whether he also

suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally

defaulted claim is unavailable unless **both** cause and prejudice are demonstrated.  *See, e.g.*, *Stepney*

*v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997)

(citing *Stepney*).  Moreover, since Melendez has not established that he is actually innocent of any

of the crimes of which he was convicted, the Court recommends that the Petition be **denied** as to

---

[3] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

this ground for this procedural reason.[4]

### G.  Accumulation of Errors

Petitioner's final argument is essentially based on the contention that, when combined, the errors already discussed denied Petitioner his right to a fair trial.

The accumulation of trial errors may warrant *habeas* relief even though such errors would not merit a new trial when considered individually.  *See Joyner v. Miller*, 2002 WL 1023141 (S.D.N.Y., Jan. 7, 2002) (citing *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999)). Nevertheless, implicit in such a claim is "that the alleged individual errors a petitioner seeks to aggregate are actually *errors*," for "the accumulation of non-errors does not warrant a new trial." *Id*. (quoting *Lumpkin*, 192 F.3d at 290).  In addition, the accumulation of errors only warrants a new trial when those errors so prejudice the petitioner as to make the trial fundamentally unfair.  *Id*. (citing, *inter alia*, *Collins v. Scully*, 878 F. Supp. 452, 460 (E.D.N.Y. 1995)).

Here, Petitioner seeks to aggregate the alleged errors discussed above, arguing that the cumulative effect of these errors warrants a new trial.  However, Petitioner has failed to show that any of the errors which he now seeks to aggregate were in fact themselves errors.  Indeed, the foregoing discussion plainly illustrates that none of the arguments asserted by Petitioner have any merit.  Thus, under the rule explicated in *Lumpkin*, Petitioner's attempt to secure *habeas* relief by aggregating non-errors must fail.  Additionally, even if Petitioner were able to show errors at trial,

---

[4] In any event, even when viewing the merits of the jury instructions as a whole, there is not the least bit indication that the supplemental instructions prejudiced Petitioner.  The jury specifically asked whether a Defendant could be found guilty if he merely assisted in the planning of the crime and did not himself participate in the actual commission of the crime.  Trial Tr. at 2056.  In responding to the jury's question, the trial judge adequately addressed the issue by referring the jury to the court's previous instruction on the law regarding accessorial conduct.  Since the jury had already heard the instruction on accessorial conduct during the initial charge, any prejudice that might potentially result from a trial court's supplemental jury instruction is not present in Petitioner's case.

Petitioner has failed to demonstrate that any prejudice resulting from the accumulation of those errors led to a fundamentally unfair trial.

Accordingly, this ground of the Petition should be **denied**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of Habeas Corpus be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

__FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW__.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   May 12, 2006
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-20-*